<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAUL HANDELSMAN, : | |
| : | |
| Plaintiff, : | Civil Action No. 08-675 (SRC) |
| : | |
| v. : | **OPINION** |
| : | |
| MICHAEL J. ASTRUE, : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| : | |
| Defendant. : | |

**<u>Chesler, District Judge</u>**

This matter comes before the Court on the appeal by Plaintiff Saul Handelsman ("Handelsman") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he is not eligible for Social Security Disability Benefits, during the period from June 16, 2002 through September 30, 2004, under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is not supported by substantial evidence and is hereby **VACATED** and **REMANDED** for further proceedings.

**I. BACKGROUND**

The following facts are undisputed. Handelsman was born in 1952. He has worked as a managing director of securities trading at an investment bank. On June 16, 2002, he experienced a traumatic head injury. On July 25, 2003, he filed an application for Social Security Disability

Insurance benefits, alleging disability since June 16, 2002, due to cognitive limitations resulting from his head injury. Plaintiff's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, a hearing before Administrative Law Judge ("ALJ") Richard L. DeSteno was held on July 22, 2004, and Plaintiff was found not to be disabled. Plaintiff appealed to the district court, and the case was resolved through a consent Order of remand for further proceedings.

In January of 2005, Plaintiff filed a separate disability claim with New Jersey Disability Determination Services (the "State Agency"). On May 23, 2005, the State Agency issued a decision finding disability of severity sufficient for benefits beginning on October 1, 2004. On December 30, 2005, the Appeals Council, considering both the Order of remand by the district court and the State Agency decision, accepted the State Agency decision and remanded the matter to the ALJ for a determination of disability for the period from June 16, 2002 through September 30, 2004.

A post-remand supplemental hearing was held before ALJ DeSteno on May 30, 2006; the ALJ denied Plaintiff's claim in an unfavorable decision issued June 8, 2006. After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 28, 2008, that decision became final as the decision of the Commissioner of Social Security. On February 5, 2008, Plaintiff filed the instant appeal of the Commissioner's decision.

## II. DISCUSSION

**A.     Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial

2

evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that

3

supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

## B.      Standard for Awarding Benefits Under the Act

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

## C.      The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[1] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply and give reasons why those listings are not met or equaled. In Jones v. Barnhart, 364 F.3d 501,

---

[1] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." (Id.) An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform his past relevant work, he will not be found disabled under the Act. In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120. If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. §§ 404.1512(g), 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be

found disabled. Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy. These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity). These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b). When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled. 20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983). The claimant may rebut any finding of fact as to a vocational factor. 20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled." Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). Moreover, "the combined impact of the impairments will be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523. However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits. See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three

7

determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision. See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006). Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format." Id.

    D.      The ALJ's decision

In brief, the issue before the ALJ on remand was whether Plaintiff was disabled under the Social Security Act during the period from June 16, 2002 through September 30, 2004. The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had cognitive and hearing impairments that were "severe" within the meaning of the Regulations; 3) at step three, Plaintiff's impairments did not meet or equal an impairment in the Listings; 4) at step four, the Plaintiff did not retain the residual functional capacity to perform his past relevant work, and the ALJ found particular exertional and non-exertional functional limitations; and 5) at step five, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that Plaintiff can perform that exist in significant numbers in the national economy. The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, during the period from June 16, 2002 through September 30, 2004.

    E.      Plaintiff's Appeal

The key dispute in this appeal concerns the ALJ's determination at step five, which relies on and incorporates the step four residual functional capacity determination. Plaintiff does not dispute the ALJ's determination that, at step three, Plaintiff did not meet the requirements of any Listing. At step four, even though the ALJ ruled in Plaintiff's favor, finding that his residual

functional capacity did not enable him to perform his past relevant work, the RFC determination is at issue because of its role at step five.

Plaintiff contends that the ALJ erred at step five by failing to incorporate all of Plaintiff's limitations into the hypothetical posed to the vocational expert. Although this Court cannot determine what limitations should have been included in the hypothetical, the ALJ did not adhere to Third Circuit law on construction of the hypothetical.

The basic principle which guides the ALJ's construction of the hypothetical is that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). The Third Circuit further explained:

> Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible – the ALJ can choose to credit portions of the existing evidence but 'cannot reject evidence for no reason or for the wrong reason.' Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it.

Id. (citations omitted).

The ALJ's hypothetical included these nonexertional limitations: "involving no greater than simple repetitive tasks" and "not requiring good memory." In the decision, the ALJ did not discuss the details of the hypothetical, but stated that it reflected the "above-stated residual functional capacity." (Tr. 228.) The step five hypothetical thus incorporated the limitations established in the step four residual functional capacity determination.

9

For the reasons that follow, this Court finds that the residual functional capacity determination at step four is not supported by substantial evidence. The ALJ addressed the issue of residual functional capacity on three pages of the decision. (Tr. 225-228.) The ALJ first quoted the relevant regulations and next summarized Plaintiff's testimony at the first and second hearings. The ALJ then assessed Plaintiff's credibility and found:

> The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the reports of treating and examining physicians. While it is clear that the claimant does have cognitive limitations resulting from a subarachnoid hematoma, the claimant's testimony indicates that he retains sufficient mental acuity and concentration to drive a car, even involving trips of one and one-half hours in duration, follow a television program, and read books, with some rereading. Thus, the evidence of record fails to support the degree of incapacitation alleged by the claimant.

(Tr. 226.)

Next, the ALJ rejects an unidentified assessment provided by the State Agency. (Tr. 227.) The ALJ does not identify the assessment by a citation to the record, but it appears that this may refer to Dr. Hecker's assessment of May 10, 2005. (Tr. 375-387.) The ALJ does state that the assessment showed marked limitations in mental functioning in regard to residual functional capacity, which are "not supported by the record." (Id.) If indeed the ALJ rejected Dr. Hecker's May 10, 2005 assessment, and if, as the record suggests, Dr. Hecker's assessment provided the basis for the State Agency's decision to grant benefits, which the Commissioner accepted, it raises the question of whether it is reasonable for the Commissioner to reject an assessment that the Commissioner has, in effect, already accepted. Any such error might be harmless, however, since Dr. Hecker's assessment is from 2005, and the period under consideration ended in 2004.

Next, the ALJ rejects evidence provided by each of Plaintiff's treating physicians as "not supported by his own evaluation or the record as a whole. . ." (Id.) In a form completed on June

10

28, 2004, Dr. Carnevale had found Plaintiff incapable of tolerating even low-stress jobs due to his cognitive deficits; Dr. Fellus manifested the same conclusion on the form he completed on July 6, 2004.  This evidence could constitute substantial evidence that Plaintiff's disability onset date was earlier than October 1, 2004.

       The ALJ next concludes that Plaintiff has suffered from cognitive limitations, stating that Plaintiff "has had functional limitations, when performing simple repetitive tasks not requiring a good memory, of mild restrictions of daily living, mild difficulties in maintaining social functioning, mild deficiencies of concentration, persistence or pace . . ." (Id.)   The ALJ thus determined that Plaintiff's functional limitations due to his cognitive limitations were no more than mild.

       Lastly, the ALJ concluded that, based on the record as a whole, as stated above, Plaintiff retains the residual functional capacity to perform work "involving no greater than simple, repetitive tasks" and "not requiring good memory." (Id.)

       This residual functional capacity determination is highly problematic.  The ALJ rejected the medical evidence provided both by Plaintiff and by the State Agency, and the only evidence cited by the ALJ in support of his determination is the testimony of Plaintiff, who, at step two, the ALJ found to have severe cognitive limitations.

       Thus, the only evidence that the ALJ cites in support of his residual functional capacity determination is the testimony of Plaintiff, which the ALJ in part discredits, saying that the evidence of record does not support the degree of incapacitation claimed.  As to the contrary evidence of the doctors and experts, that is rejected as not supported by the record.  This leaves this Court to ask: what exactly is this record that supports the discrediting and rejecting of all other evidence?  Why has the ALJ not specifically cited the evidence in this record so that this

Court might review the specific evidence that the ALJ found to support his determination?

Moreover, after the ALJ rejected all the evidence that he did, what remains to support his determination? Again, in short, the only evidence that the ALJ identified that supports his step four determination are Plaintiff's statements at the July 22, 2004 hearing about driving, reading, and watching television. This Court cannot conclude that this is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. There are several reasons to find that this evidence is not substantial.

First, the ALJ failed to follow Third Circuit law regarding the residual functional capacity determination made at step four and then relied on at step five. In Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999), the Third Circuit clearly stated a number of principles fundamental to performing step five:

> [T]he ALJ had the burden to show there is other employment the claimant is capable of performing. In doing so, an ALJ may not make speculative inferences from medical reports. In addition, an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.

Id. (citations omitted). In this case, the ALJ has not correctly followed even one of these requirements. The ALJ rejected the medical evidence without giving a comprehensible reason. It does appear that, by rejecting the evidence of the experts and crediting only the ALJ's own assessment based on the Plaintiff's testimony, the ALJ substituted his expertise for that of physicians who presented competent medical evidence.

This is not to say that an expert might not view Plaintiff's statements about driving, television watching, and reading as strong evidence supporting the ALJ's conclusions about residual functional capacity. An expert might agree that the functional limitations due to

12

cognitive impairment are not more than mild. That, however, is a matter for an expert, and given the amount of evidence from experts in the record, as Plummer establishes, the ALJ cannot rely on his own assessment and discount all the expert evidence.

Moreover, the ALJ's residual functional capacity analysis does not appear to conform to the requirements of the Regulations, which speak to the mental demands of unskilled work:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15.[3]

Although SSR 85-15 does not claim to provide the definitive analysis of the mental abilities to be assessed, it is worth noting that the abilities that the ALJ considered – driving, watching television, and reading – appear to say little to nothing about the abilities referred to in SSR 85-15. Again, this is a matter for the medical expert to determine, but it is not clear how driving, watching television, and reading are informative about "the abilities (on a sustained

---

[3] See also 20 C.F.R. § 404.1545(c):

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations." Id.

Furthermore, upon questioning by Plaintiff's attorney, the vocational expert stated that, if someone has "significant short-term memory loss," and could not remember directions from one day to the next, he would not be capable of doing the unskilled jobs that existed in significant numbers in the national economy. (Tr. 414.) This shows that the ALJ's errors could be more than harmless, since a determination of greater cognitive impairment and, hence, reduced residual functional capacity, might well have resulted in a finding of disability at step five. On the other hand, the record is not so clearly in favor of Plaintiff that reversal and award of benefits is warranted: although the evidence of record supports finding substantial cognitive limitations, the record is not so one-sided that it can only support finding that, prior to October of 2004, Plaintiff suffered from short-term memory loss at this disabling level.

Lastly, the heavy weight that the ALJ placed on the Plaintiff's statements is troubling in this case because the ALJ determined, at step two, that Plaintiff has severe cognitive limitations. The ALJ does not appear to have considered the appropriateness of relying on the statements of a person with severe cognitive limitations as the sole basis for a determination that he is capable of work. Regardless, in this case, on these facts, such statements do not constitute substantial evidence for the purpose of determining residual functional capacity.

At step five, the ALJ presented to the vocational expert a hypothetical which incorporated an invalid residual functional capacity determination, and which is not supported by substantial evidence; the hypothetical does not meet the requirements of Rutherford. As a result, the expert's testimony cannot constitute substantial evidence that there are jobs that Plaintiff can perform that exist in significant numbers in the national economy. The Commissioner's step five

determination is not supported by substantial evidence.  The Commissioner's disability decision will be vacated and the case remanded for further proceedings in accordance with this Opinion.

   This Court considers, but need not decide, the issue of whether, on remand, the question for determination is the date of onset of an already-established disability, rather than whether Plaintiff was disabled during the period of 2002 through 2004.  The Commissioner has decided that Plaintiff has been disabled since October 1, 2004.  As a matter of common sense – and this Court acknowledges that common sense is not necessarily determinative of legal questions – is not the remaining key question the date on which Plaintiff's disability began?

   How the question is conceived has practical significance.  When the question is framed as a matter of date of onset, then, pursuant to SSR 83-20, the ALJ might call on the services of a medical advisor for assistance in determining the date of onset.  This might allow for a more efficient resolution of this dispute than, for example, returning the case to ALJ DeSteno for yet another residual functional capacity determination and consultation with a vocational expert.

### III.  CONCLUSION

   For the reasons stated above, this Court finds that the Commissioner's decision is not supported by substantial evidence.  The Commissioner's decision is vacated and the matter is remanded to the Commissioner for further proceedings in accordance with this Opinion.


Dated: December 29, 2008

                 s/ Stanley R. Chesler          
               STANLEY R. CHESLER, U.S.D.J.